HENRY M. THREEFOOT ET AL. *v.* NEW ORLEANS & NORTH-
EASTERN RAILROAD COMPANY.

[43 South. Rep., 303.]

CARRIERS. *Railroads. Connecting lines. Shortage in freight. Demand.
Code* 1892, § 4301. *Code* 1906, § 4853.

> A letter from the consignee to the last of connecting carriers an-
> nouncing a shortage in a shipment and asking that it be traced is
> not such a demand as will make the last carrier liable under
> Code 1892, § 4301 (Code 1906, § 4853), providing that if a carrier
> receive freight from another carrier for further transportation
> and delivery, and on arrival at place of delivery there is a shortage
> therein, it is the duty of the last carrier to obtain and furnish
> the consignee, "on demand," true copies of all notations, excep-
> tions, records, and memoranda entered on the books of each car-
> rier touching the receipt, transfer, and handling of the freight
> while in transit, and, failing to furnish the same within thirty
> days after demand, it shall be presumed to have caused such loss.

FROM the circuit court of Lauderdale county.

HON. ROBERT F. COCHRAN, Judge.

Threefoot and others, the appellants, doing business under
the firm name of Threefoot Brothers & Company, were plaintiffs
in the court below; the railroad company, the appellee, was
defendant there. From a judgment in defendant's favor the
plaintiffs appealed to the supreme court.

The plaintiffs purchased from one Pettus, of Moran, Texas,
a carload of pecans, 306 sacks, weighing 24,790 pounds, which
were delivered by the seller to the Texas & Pacific Railroad
Company at Moran for shipment to plaintiffs at Meridian,
Mississippi. Of the shipment, forty-four sacks, weighing 3,930
pounds, were not delivered to plaintiffs by the defendant, and
the suit was to recover the value of the pecans lost in transit.
On the trial the court held that the demand made by plaintiffs
did not meet the requirements of sec. 4301 of the code of 1892,

which provides that "if a common carrier receive freight for further transportation and delivery within this state from another carrier, on any contract, express or implied, for continuous carriage, and it arrive at the place of delivery in a broken or damaged condition, or some parts thereof be lost or destroyed, it is the duty of the last carrier to obtain and furnish to the consignee, or other persons interested, on demand, true copies of all notations, exceptions, records, and memoranda entered on the books of each carrier touching the receipt, transfer and handling of the freight while in transit; and if such last carrier shall not so furnish the same within thirty days after demand, it shall be presumed to have caused such damage, loss or destruction."

The proof in the case touching the loss showed that the shipment was short the forty-four sacks when it was transferred from the Texas & Pacific Railroad to the defendant company.

*G. Q. Hall,* and *Hall & Jacobson,* for appellants.

The facts are these: One Pettus delivered to the Texas & Pacific Railroad Company at Moran, Texas, 306 bags of pecans for transportation to Meridian, Mississippi, and receiver therefor bill of lading in favor of shipper, order notify Threefoot Bros. & Company, Meridian, Mississippi. Pettus drew on Threefoot Bros. & Company for the purchase price of the pecans, with the bill of lading attached. Threefoot Bros. & Company paid the draft and received the said bill of lading, which they surrendered to the appellee railroad company at Meridian, paid freight on the 306 bags of pecans, and received the shipment. Upon examination, they discovered that the said shipment was forty-four bags short, evidently lost, and the next day, to wit, November 24, 1905, the following letter was written to appellee's agent at Meridian by said Threefoot Brothers:

"Car pecans shipped us from Moran, Texas, arrived yesterday and short forty-four bags. The original car was trans-

ferred at some point and presume this what caused the shortage. Kindly trace shortage and oblige."

Threefoot Bros. & Company also filed with the said agent claim for the value of the forty-four bags of pecans, the freight paid thereon, and interest.

The railroad company, appellee, did not furnish Threefoot Bros. & Company, the consignee, "true copies of all notations, exceptions, records and memoranda entered on the books of each carrier touching the receipt, transfers and handling of the freight while in transit" within thirty days after said letter or the filing of said claim.

Appellee's contention, which the court below accepted, was that the statute is highly penal, and therefore to be strictly construed, hence appellant's letter of November 24, 1905, requesting appellee to "trace shortage" was not a "demand" under sec. 4301 of the Annotated Code of Mississippi 1892, for "true copies of all notations, exceptions, records and memoranda entered on the books of each carrier touching the receipt, transfers and handling of the freight while in transit," and appellee was not liable because it did not furnish the "true copies of all notations, etc.," within thirty days and could defend the suit, thus forced upon appellant, by showing that the loss occurred on the initial carrier, the Texas & Pacific Railroad.

True, the statute is penal, and the general rule is that such statutes are to be strictly construed; yet they are not to be construed so strictly as to defeat the obvious intention of the legislature, nor is the rule to be so applied as to exclude from the operation of the statute, cases which the words in their ordinary acceptation, or in the sense in which the legislature manifestly used them, would comprehend. Black on Interpretation of Laws, p. 288, citing *United States* v. *Wiltberger,* 5 Wheat., 76; *United States* v. *Hartwell,* 6 Wall., 385; *Dyke* v. *Elliott,* L. R. 4 P. C., 184; *King* v. *Inhabitants of Hodnett,* 1 Dunn. & E., 96; *In re Coy,* 31 Fed. Rep., 794; *Walton* v. *State,* 62 Ala.,

197; *Crosby* v. *Hawthorn,* 25 Ala., 221; *Doe* v. *Avaline,* 8 Ind., 6; *Parkinson* v. *State,* 14 Md., 184; *Comm.* v. *Loring,* 8 Pick., 370; *Melody* v. *Reab,* 4 Mass., 471; *Butler* v. *Ricker,* 6 Me., 268; *Pike* v. *Jenkins,* 12 N. H., 255; *Wilson* v. *Wentworth,* 25 N. H., 245; *Mayor* v. *'Davis,* 6 Watts & S., 269; *Bartolett* v. *Achey,* 38 Pa. St., 273; *People* v. *Bartow,* 6 Cow., 290; *Randolph* v. *State,* 9 Texas, 521; Sedgwick Stat. Contr. (2d ed.), 282. What was the intention of the legislature? Manifestly, that the last carrier, delivering freight "in a broken or damaged condition or some part thereof lost or destroyed," should "obtain and furnish to the consignee or other person interested, on demand, true copies of all notations, exceptions, records and memoranda entered on the books of each carrier touching the receipt, transfers and handling of the freight while in transit; and if such last carrier shall not so furnish the same within thirty days after demand, it shall be presumed to have caused such damage, loss, or destruction." A "demand" sets the statute in operation—that is, imposes the duty on the last carrier to obtain and furnish to the consignee or other person interested "true copies of all notations, etc." The statute does not attempt to prescribe any form of demand. It does not even say demand "for" true copies of all notations, etc. It merely uses the words "on demand" and "demand."

The filing of a claim for damages for the loss or destruction of the freight would be a "demand" just as the presentation of an open account, a promissory note, or any other evidence of indebtedness would be a "demand." This, too, is the usual and customary procedure and the one often required by the railroad companies under the terms and conditions of their bills of lading and freight receipts, and this is a matter of common knowledge to the bench and bar, as well as commercial men. It is the "demand" which the carrier must respond to by paying or be sued. If it was not liable to pay this "demand," how would it respond? Simply by showing true copies of all notations,

etc., which would indicate that the loss or damage occurred on a connecting line. Every lawyer and shipper has seen the great file of letters and other writings attached to his claim gathered from the various departments of the numerous railroads interested, as it took its red tape winding and waiting way. We submit that this is the "demand" the legislature really had in mind when devising this statute.

The legislature devised a remedy to meet the railroads' abuse of a common practice, and not to prescribe a rule of procedure which the consignees, who are not lawyers, but as a rule busy commercial men, could only get benefit of by having the language of the statute constantly before them, when taking up the subject of a loss or damage with the railroads.

*Bozeman & Fewell,* and *McWillie & Thompson,* for appellee.

Manifestly the statute did not give the plaintiffs any rights whatever unless they complied with its terms. The letter counted upon as a demand was not written to the appellee at all, but to one Gray, agent. If Gray be assumed to have been the agent of, and if the letter be treated as addressed to, the appellee, it is not in any sense a demand under the statute. It is a request to trace shortage, and nothing more; not a demand for copies of notations, exceptions, records and memoranda. Counsel cannot convert a request to trace shortage into a demand for copies of notations, exceptions, records, etc.

WHITFIELD, C. J., delivered the opinion of the court.

The learned judge correctly decided the case below. We only deem it necessary to say that a highly penal statute, like sec. 4301 of the code of 1892 (sec. 4853 of the code of 1906), is not complied with by a note in the following language:

"S. GRAY, *Agent:* Car pecans shipped us from Moran, Texas, arrived yesterday and short forty-four bags. The original car

was transferred at some point, and presume that this is what caused the shortage. Kindly trace shortage, and oblige,

"THREEFOOT BROS. & CO."

It would be going far beyond any allowable limit in the construction of statutes imposing penalties to hold that the words "kindly trace shortage" are in any proper sense the equivalent for a demand for the notations, exceptions, etc., referred to in the section.

*Judgment affirmed.*